FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2006 FEB -9 PM 1:27
LORETTA G. WHYTE
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF LOUISIANA**

**06-0611**
**SECT. B MAG. 1**

Association of Communities for Reform Now (ACORN), New Orleans Chapter, the Lower Ninth Ward Neighborhood Council, Inc., Vera McFadden, and Malcolm Suber

Plaintiffs,

v.

Kathleen Blanco, Governor of The State of Louisiana, Al Ater, Secretary of State, State of Louisiana, Louis Keller, Registrar of Voters, Parish of Orleans, State of Louisiana, Kimberly Williamson Butler, Clerk of Criminal Court, Parish of Orleans, State of Louisiana

Defendants.

CIVIL ACTION NO.:
**CLASS ACTION**
**FOR INJUNCTIVE AND DECLARATORY RELIEF**

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs the Association of Communities for Reform Now ("ACORN"), New Orleans Chapter, the Lower Ninth Ward Neighborhood Council, Inc., Vera McFadden, and Malcolm Suber ("Plaintiffs") by and through counsel, bring this class action complaint for a declaratory judgment and injunctive relief against defendants, Kathleen Blanco, Governor of The State of Louisiana; Al Ater, Secretary of State, State of Louisiana; Louis Keller, Registrar of Voters, Parish of Orleans, State of Louisiana; and Kimberly Williamson Butler, Clerk of Criminal Court, Parish of Orleans, State of Louisiana (collectively "Defendants"), and state as follows:

✓ Fee $350.00
✓ Process
X Dktd
CtRmDep
Doc. No

**NATURE OF ACTION**

1. This action is brought to protect the voting rights of voters in Orleans Parish, Louisiana who have been temporarily displaced from their permanent residences in the aftermath of Hurricane Katrina and reside outside the Parish.

2. This is an action for declaratory and injunctive relief brought on behalf of the plaintiffs, their Orleans Parish members, and similarly situated Orleans Parish residents who were displaced by Hurricane Katrina and whose rights to vote will be denied and/or abridged in the upcoming Orleans Parish primary and general elections that are scheduled for April 22, 2006 and May 20, 2006, respectively.

3. On August 29, 2005, Hurricane Katrina landed on the Gulf Coast causing catastrophic damage to the City of New Orleans. In response to voluntary and mandatory evacuation orders, hundreds of thousands of residents left the city and dispersed throughout the country. In the days after the storm's landfall, government agencies and volunteers evacuated more residents to temporary shelters throughout the United States.

4. Hurricane Katrina disproportionately impacted low-income, African-American neighborhoods. Of the 354,000 people who resided in the sections of New Orleans in which Katrina caused moderate to severe damage, 75% were African-American, 29% lived below the poverty line, more than 10% were unemployed, and more than half were renters.

5. In light of the devastation caused by Hurricane Katrina, Defendant Governor Kathleen Blanco issued an executive order postponing the Orleans Parish elections that had been initially scheduled for February 4 and March 4, 2006.

6. In November 2005, the Louisiana Legislature held a special session to address urgent post-hurricane issues, including an emergency election plan. During that session, the

Legislature enacted and the Governor signed into law Act 40, which grants Defendant Secretary of State Ater ("the Secretary") the authority to formulate a special emergency election plan following a declaration of disaster or emergency by the Governor and both houses of the Legislature.

7. Although Act 40 was intended to facilitate post-Katrina elections, it falls short of its goal because it does not expressly grant the Secretary substantive authority to take the necessary measures to ensure that all displaced residents of Orleans Parish can vote either in person or by absentee ballot.

8. Louisiana law, including Act 40, when applied to the post-Katrina landscape, will disenfranchise or severely burden the franchise of thousands of displaced Orleans Parish voters, a disproportionate number of whom are African-American, in violation of Section 2 of the Voting Rights Act of 1965, codified at 42 U.S.C. §§ 1973 *et seq.*

9. On January 24, 2006 the Governor issued executive order KBB 2006-2 rescheduling the Orleans Parish primary election for April 22, 2006 with the general election on May 20, 2006.

## PARTIES

Plaintiffs

10. Plaintiff ACORN is an organization with more than 9,000 members in the New Orleans area. ACORN is a community organization of low and moderate-income families working together for social justice and stronger communities. In the wake of Katrina, ACORN founded the ACORN Katrina Survivors Association, which consists of more than 1,600 members working towards creating a voice for survivors, gathering resources that families need to survive, and developing a rebuilding plan that enables stronger communities for all. ACORN dedicates a

significant amount of its resources to encouraging civic engagement through registering voters and advocating for voter participation. ACORN's voter participation efforts have been hampered by its inability to obtain the current addresses of displaced Orleans Parish voters.

11. The Lower Ninth Ward Neighborhood Council, Inc. is a non-profit membership organization comprised of approximately 150 residents of the Ninth Ward in the City of New Orleans. Most of its members are African-American homeowners, and many are registered to vote in Orleans Parish.

12. Vera McFadden is African American and at least 18 years of age. She is a citizen of the United States and a legal resident of Orleans Parish in the State of Louisiana. She is also President of the Lower Ninth Ward Neighborhood Council. Ms. McFadden is a registered voter in Orleans Parish and would like to vote in all elections to be held in 2006.

13. Malcolm Suber is African American and at least eighteen years of age. He is a citizen of the United States and a legal resident of Orleans Parish in the State of Louisiana. Mr. Suber is a registered voter in Orleans Parish and would like to vote in all elections to be held in 2006.

Defendants

14. Defendant Kathleen Blanco is the Governor of the State of Louisiana. She is sued in her official capacity in connection with actions taken under color of state law. As Governor, Defendant Blanco is the chief executive officer of the State of Louisiana, having the power and responsibility to issue executive orders rescheduling state and parish elections. *See* La. R.S. 18:401.1. In addition, as Governor, she has the authority to convene the legislature of Louisiana into extraordinary session to consider only those matters specifically enumerated in her proclamations. *See* La. Const. art. III, § 2(B).

15. Defendant Al Ater is the Louisiana Secretary of State. He is sued in his official capacity in connection with actions taken under color of state law. As Secretary of State, Defendant Ater is the chief election officer of the State of Louisiana, having the power and responsibility to supervise and administer state and parish election laws. *See* La. Const. art. IV, § 7.

16. Defendant Louis Keller is the Registrar of Voters for the Parish of Orleans in the State of Louisiana. He is sued in his official capacity in connection with actions taken under color of state law. As Registrar of Voters, Defendant Keller compiles lists of eligible voters and oversees the absentee voting process.

17. Defendant Kimberly Williamson Butler is the Clerk of the Criminal Court for the Parish of Orleans in the State of Louisiana. She is sued in her official capacity in connection with actions taken under color of state law. As Clerk of the Criminal Court, Defendant Butler is the chief elections officer of the Parish of Orleans, with responsibility for conducting parish elections as set forth in the Louisiana Election Code. *See* La. R.S. 18:422.

## JURISDICTION AND VENUE

18. This Court has jurisdiction of the claims asserted in this complaint pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. Plaintiffs' action for declaratory and injunctive relief is authorized under 28 U.S.C. §§ 2201 and Federal Rule of Civil Procedure 57.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to this action occurred in this district, and two Defendants may be found in this district.

## FACTUAL BACKGROUND

### A. Hurricane Katrina Disproportionately Affected African-American and Lower Income Residents of New Orleans.

20. On August 29, 2005, Hurricane Katrina made landfall along the Gulf Coast and caused catastrophic damage to the City of New Orleans. Hurricane Katrina disproportionately impacted predominantly African-American, lower-income neighborhoods.

21. According to U.S. Census data, in 2000, the population of New Orleans was approximately 67% African American.

22. As of February 3, 2006, the lower Ninth Ward, which had been 95.7% African-American before Katrina struck, remained uninhabitable and only accessible for "look and leave" visitation.

23. Over 80% of New Orleans' African-American population has been displaced from the Parish.

24. Many of the New Orleans residents who were forced to evacuate from the City, the overwhelming majority of whom were African-American, have not yet returned. The U.S. Census estimated that the New Orleans population in July 2004 was approximately 462,269. The Greater New Orleans Community Data Center estimated the population of New Orleans in January 2006 was 156,140.

25. Currently, a number of African Americans represent Orleans Parish, including the mayor of New Orleans, the member of the U.S. House of Representatives whose district encompasses most of New Orleans, eight members of the Louisiana House of Representatives whose districts include parts of New Orleans, three members of the Louisiana Senate whose districts include parts of New Orleans, and four members of the New Orleans city council.

26. Over 32% of Louisiana's population is African American.

**B. <u>Louisiana Election Code Fails To Safeguard the Voting Rights of New Orleans' Displaced Voters, the Overwhelming Number of Whom Are African-American</u>.**

27. Louisiana election law fails to ensure that during emergency conditions, particularly when a significant portion of the population is temporarily residing outside of the state, the voting rights of displaced residents will be protected.

28. Louisiana law requires that an individual who expects to be absent from his parish on Election Day request, in writing, an absentee ballot. The registrar is prohibited by law from sending absentee ballots without first receiving such an application. Louisiana Revised Statute 18:1308(A)(1)(a) states that immediately upon receipt of an application by mail, "the registrar shall mail the necessary instructions, certificates, ballots, and envelopes to the applicant at the address furnished by the applicant." The statutes further states that "the registrar shall not send an absentee ballot to an applicant whose application for an absentee ballot does not meet the requirements of Subsection A or B" of subsection (F), which refers to the procedure for requesting an absentee ballot. *Id.*

29. Persons who have registered by mail must vote for the first time in person according to Louisiana Revised Statute 18:115(F). Upon information and belief, approximately 10,000 displaced Orleans Parish residents who have registered by mail to vote will be voting for the first time in the April or May 2006 primary or general elections. Under these circumstances, current state law requires these voters to cast their ballot in person. La. R.S. 18:115(F).

30. State law provides for early voting, which must take place between twelve and six days prior to an election. La. R.S. 18:1309(A)(1).

31. Louisiana election law also provides that in the case of insufficient space in the parish registrar's office, "the registrar may provide for an alternate location to conduct early voting, which location shall be in the courthouse or in a public building in the immediate vicinity thereof." The present law does not, however, provide for early voting locations outside of the vicinity of the registrar's office.

32. In order to register to vote under Louisiana law, a voter must present a driver's license, birth certificate, "or other documentation which reasonably and sufficiently establishes the applicant's identity, age, and residency." Additionally, the law requires that prior to voting an individual must present a Louisiana driver's license, a Louisiana special identification card, or other generally recognized picture identification card. If the voter has none of these, he is permitted to complete an affidavit, but his vote is subject to challenge.

33. In four of the six neighborhoods that suffered the worst Katrina related damage, over 80% of the population is African-American. African-Americans resided in approximately 72% of the homes that flooded over six feet. Upon information and belief, many of the African-American victims of Hurricane Katrina lost most if not all of their possessions when their homes flooded and no longer have the types of identification that are required to vote according to the current election code.

## C. <u>Act 40 and the Secretary of State's Emergency Election Plan Do Not Adequately Protect the Voting Rights of Displaced New Orleans Residents.</u>

34. During the 2005 First Extraordinary Session of the Louisiana Legislature, the legislature enacted Act 40 to help the Secretary of State oversee the post-Katrina election process. In pertinent part, Act 40 "authorizes the Secretary of State to certify to an emergency and write an emergency election plan, upon concurrence of said emergency by the governor, a

majority of the members of the Senate Committee on Senate and Governmental Affairs, and the House Committee on House Governmental Affairs."

35. Act 40 is limited in that it permits the Secretary of State to address only "the technical, mechanical, or logistical problems impairing the holding of elections with respect to the relocation or consolidation of polling places within the parish, potential shortages of commissioners and absentee commissioners, or shortages of voting machines."

36. In accordance with Act 40 on or about January 23, 2006, the Secretary released his Emergency Plan for Orleans Parish Municipal Elections. That plan consisted of four substantive sections: voting machines, polling places, commissioners and outreach.

37. First, the emergency plan proposes to provide additional counting equipment for absentee ballots and early voting ballots.

38. Second, it deputizes the Secretary's staff to assist the registrar's office with the potentially high volume of the requests for absentee ballots by mail. The Secretary also proposes providing his Baton Rouge Post Office Box Number to be used on all applications and absentee ballots. In addition, the Secretary's emergency plan calls for daily runs between his office and the Registrar's office in New Orleans for the processing of the absentee ballots.

39. Third, the Secretary's plan calls for the establishment of multiple "polling centers" in addition to the regular polling places.

40. Finally, the Secretary requests additional commissioners and absentee commissioners to assist in the tabulation of the absentee votes.

41. Due to Hurricane Katrina's displacement of its residents, Orleans Parish lost between 27% - 48% of its voting population. Although in-state satellite voting centers would

facilitate voting for some displaced voters, failure to provide out-of-state polling centers would leave thousands of out-of-state displaced voters with no nearby voting site.

42. Many of New Orleans' displaced voters are temporarily residing in Houston (approximately 317 miles from New Orleans) and Atlanta (approximately 429 miles from New Orleans.) Upon information and belief, many of these evacuees do not have the resources to travel from their temporary residence to New Orleans to vote in person during the upcoming municipal elections.

43. Secretary Ater intends to disseminate notice of the election, including the date of the election, date of the early voting period and its locations, date for submitting an application for absentee voting and notice of the polling place relocations, by placing notices in the official parish journal, weekly area newspapers, the Secretary's website and at prior polling places.

44. The Secretary intends to inform displaced voters of the election by an "outreach campaign" that includes mailing a letter along with each application for an absentee by mail ballot, staffing the Secretary's 1-800 number with personnel trained on the election process, producing a public service announcement to be broadcast in those areas where there is a "high concentration" of displaced persons and taking out newspaper ads in areas where there is a "high concentration" of displaces persons. The Secretary has decided that nine (9) states have "high concentrations" of displaced persons: Louisiana, Texas, Arkansas, Alabama, Georgia, Mississippi, Tennessee, California and Florida.

45. Upon information and belief, the Secretary intends to mail voter information to out-of-state voters at addresses of displaced voters gathered by the Federal Emergency Management Agency ("FEMA"), as well as change of address lists from the U.S. Postal Service.

**D. The Governor's Call and the Current Proposed Legislation in the Extraordinary Legislative Session Fail To Protect the Voting Rights of Displaced Residents of New Orleans.**

46. The Governor's call for the 1st Extraordinary Session of 2006 requests the legislature to authorize displaced first-time voters who registered to vote by mail to vote absentee by mail. The Governor furthermore requests legislation that allows registered voters of a jurisdiction for which an emergency plan has been approved "to cast their ballots during the early voting period for the affected elections at registrar of voters offices in Louisiana parishes other than the parish in which such voters are registered to vote, and otherwise to provide respect thereto."

47. Currently, several bills have been introduced in the extraordinary session to provide voting protections to displaced residents of Orleans Parish, including legislation to allow first-time voters who registered by mail to vote absentee by mail and legislation to allow voters to vote at any registrar in any parish during the early voting timeframe.

48. These bills, if enacted, would not sufficiently protect displaced Orleans Parish voters, particularly those individuals who are temporarily sheltered in a location that is a significant distance from New Orleans.

49. At present, there are no proposals to send absentee ballots automatically to displaced voters with known addresses, to publicize notices about the election in all the states where displaced voters reside, or to modify the identification requirements for registering to vote and voting.

50. On information and belief, the Secretary of State has determined that it is feasible to conduct out-of-state satellite voting in the nine states that he has identified as having the highest concentrations of displaced persons.

**E. Plaintiffs and Their Members Will Be Denied An Equal Opportunity To Vote in the New Orleans Elections Absent Judicial Intervention.**

Plaintiff ACORN

51. Plaintiff ACORN is community organization of low and moderate-income families working together for social justice and stronger communities. It has more than 9,000 members in the New Orleans area, many of whom are African-American and are registered to vote.

52. As a result of Hurricane Katrina, many of ACORN's members were displaced from Orleans Parish. These members they would like to vote in New Orleans' upcoming municipal elections but lack transportation, or resources to travel, to vote in person in Orleans Parish.

Plaintiff Lower Ninth Ward Neighborhood Council

53. Plaintiff Lower Ninth Ward Neighborhood Council (Council) was founded in the 1960's and its current President, Plaintiff Vera McFadden, has been a member since 1979. For over forty years, the Council has held community forums to discuss and address important issues that impact its predominantly African-American homeowner membership. Upon information and belief, most, if not all, of its 150 members are registered to vote in Orleans Parish.

54. The high winds and floodwaters of Hurricane Katrina devastated the Ninth Ward, causing all of its residents to evacuate. Currently, many members of the Council are temporarily residing in Mississippi and Texas.

55. Council members have been active participants in the electoral process in the past, and thus, will likely seek to participate in all upcoming New Orleans elections in 2006. For many members, the long distance between their temporary residence and New Orleans; lack of

access to transportation; and gasoline prices may prevent them from exercising their right to vote. In addition, unreliability of the mail service due to Hurricane Katrina makes absentee voting an unreasonable option.

Plaintiff Vera McFadden

56. Plaintiff Vera McFadden evacuated her residence at 6303 N. Robertson Street, New Orleans in compliance with mandatory evacuation orders issued prior to the arrival of Hurricane Katrina on August 29, 2005. The Hurricane caused extensive water damage to her home, and as a result, she has been unable to return to her New Orleans home. Ms McFadden is temporarily residing in Houston, Texas.

57. Ms. McFadden hopes to return to her New Orleans residence, and she would like to participate in all upcoming elections. She believes, however, that she will be unable to vote during the April 22, 2006 election at her usual polling place, because it is a five and one half hour drive from Houston, Texas to New Orleans. Additionally, the cost of gasoline for this trip would be approximately $90 and present a financial hardship to Ms. McFadden.

58. Further, even if the Legislature were to approve pending proposals to allow displaced residents to engage in early voting in Louisiana registrars' offices outside Orleans Parish, it would be an undue hardship for Ms. McFadden to participate in early voting activities during April 10-16, 2006 because the closest Louisiana parish, Calcasieu Parish, is a three-hour drive from her temporary address.

59. Finally, absentee voting by mail is an unduly cumbersome and possibly unreliable option for Ms. McFadden given the unreliability of mail service for displaced Louisiana residents.

Plaintiff Malcolm Suber

60. Plaintiff Malcolm Suber evacuated his residence at 4366 Randolph Avenue, New Orleans in compliance with mandatory evacuation orders issued prior to the arrival of Hurricane Katrina on August 29, 2005. The Hurricane caused extensive water damage to his home and as a result, he has been unable to return. Mr. Suber is temporarily residing in Conroe, Texas.

61. Mr. Suber hopes to return to his New Orleans residence in the summer 2006. In the meantime, he would like to participate in all upcoming elections but believes that he will be unable to vote during the April 22, 2006 election, at his usual polling place, because it is a six-hour drive from Conroe, Texas to New Orleans. The cost of gasoline for this trip would be approximately $100.00, which would present a financial hardship to Mr. Suber.

62. Participating in early voting activities during April 10-16, 2006 would also create undue hardship for Mr. Suber because the closest parish, Calcasieu Parish, is a three-hour drive from his temporary address.

63. Finally, Mr. Suber cannot vote absentee by mail because, on average, it takes two to three weeks for mail to arrive to him from Louisiana. Therefore, the timely receipt of an absentee ballot is highly unlikely.

## CLASS ACTION ALLEGATIONS

64. Plaintiffs bring this action on their own behalf, their members, and on behalf of all those displaced Orleans residents who are similarly situated.

65. Plaintiffs seek to represent a class consisting of all persons who as of August 29, 2005, resided in Orleans Parish; and were displaced, and will continue to be displaced until at least April 22, 2006, from their pre-disaster primary residences by Hurricane Katrina.

66. Each of the requirements of Federal Rule of Civil Procedure 23(a) is met.

67. Members of the class are so numerous that joinder of all members is impracticable, and individual litigation by each would necessarily and substantially burden the operation of the judicial system and is prohibitive because the individual class members lack the financial means to maintain individual actions. In addition, the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications establishing incompatible rules of law for the protection of voting rights of class members.

68. The number of class members can best be estimated from records in the control of Defendants. They are believed to number in the thousands, and possibly tens of thousands.

69. Common questions of law and fact predominate in this case in that Louisiana elections law currently fails to protect the voting rights of the class members.

70. The claims of the named plaintiffs are typical of the class members in that each the voting rights of each named plaintiff, due to the current limitations of Louisiana election law, will be threatened absent judicial intervention.

71. The named plaintiffs will adequately and fairly represent and protect the interests of the class because each named plaintiff has suffered the same or similar harm, and has the same or similar interest in redress of his/her rights as all other members of the class, and thus their interests overlap and do not conflict. The attorneys representing plaintiffs are experienced and capable litigators possessed of sufficient resources to adequately protect and represent the interests of the plaintiff class.

72. The requirements of Federal Rule of Civil Procedure 23(b)(2) are met in that the state laws which are the subject of this lawsuit have been applied to the members of the class as a whole, and Defendants have acted and refused to act on grounds generally applicable to the

class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole. A class action is the exclusive method by which the interests of all affected persons can be adequately protected.

## CLAIMS FOR RELIEF

### Count One: Violation of Section 2 of the Voting Rights Act of 1965

73. Plaintiffs incorporate by reference herein paragraphs 1 through 72 above as if set forth in full.

74. The majority of the displaced residents of Orleans Parish are African-American, temporarily live outside of the parish limits, and will not have access to absentee ballots or the means to travel to New Orleans to vote in person.

75. The majority of white Orleans Parish residents remain within the parish limits and will have access to the polls to vote in person.

76. Act 40 and the Secretary of State's Emergency Plan will deny African-American voters an equal opportunity to participate in the Orleans parish elections in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973.

77. Thus, there are actual, bona fide and substantial issues in dispute between the Plaintiffs and the Defendants as to the sufficiency of the actions taken to protect the rights of temporarily displaced Orleans Parish voters.

78. This dispute between Plaintiffs and the Defendants presents a real, immediate and justifiable controversy that requires adjudication by this Court. A declaration of the legally sufficient measures that should be taken by the Defendants is needed.

79. There is no other form of proceeding that can provide Plaintiffs with the immediate declaratory and injunctive relief they seeks with respect to the aforementioned dispute.

80. Since declaratory relief is both appropriate and necessary in light of the conflicting positions of the parties with respect to the Emergency Elections Plan and the Defendants' obligations thereunder, Plaintiffs request a judicial determination of the parties' respective rights and obligations with regard to the upcoming primary and general municipal elections.

81. Plaintiffs have no adequate remedy at law for the deprivation of their rights under the Voting Rights Act of 1965.

<u>Count Two: Violation of</u>
<u>First and Fourteenth Amendments – Burden on Right To Vote</u>

82. Plaintiffs incorporate by reference herein paragraphs 1 through 81 above as if set forth in full.

83. Displaced residents of Orleans Parish who registered to vote by mail and will be first-time voters in the upcoming election are required to vote in person.

84. Plaintiffs, their members, and members of the proposed class do not have the means to travel from their temporary residence to New Orleans to cast a ballot in person, or will be severely burdened by such travel. By contrast, voters who currently reside within the limits of Orleans Parish will not be similarly burdened in casting their ballots in person at polls in the Parish.

85. By failing to provide for out-of-state polling locations, Act 40 and the Secretary of State's Emergency Plan will impose severe burdens on displaced voters' fundamental right to vote.

86. Defendants cannot show any compelling basis for requiring that displaced residents of Orleans Parish, who are first-time voters who register registered by mail, cast ballots in Orleans Parish, rather than out-of-state polling locations.

87. By reason of the foregoing, Defendants, acting under color of state law, have deprived Plaintiffs, their members, and members of the proposed class of the rights, privileges, and immunities secured to them under the First and Fourteenth Amendments to the United States Constitution and protected under 42 U.S.C. § 1983.

88. Plaintiffs have no adequate remedy at law for such deprivation of their rights, privileges, and immunities.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for a judgment:

1) Certifying a class, pursuant to Fed. R. Civ. P. 23(b)(2), consisting of all persons who as of August 29, 2005, resided in Orleans Parish and were displaced, and will continue to be displaced until at least April 22, 2006, from their pre-disaster primary residences by Hurricane Katrina;
2) Declaring that Act 40 and the Secretary of State's Emergency Plan will deny African-American voters an equal opportunity to participate in the Orleans parish elections in violation of Section 2 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973;

3) Declaring that Act 40 and the Secretary of State's Emergency Plan will impose a severe burden on displaced voters' fundamental right to vote and thereby violate the First and Fourteenth Amendments to the United States Constitution;

4) Directing Defendants to adopt voting procedures, including satellite polling places, and the mailing, in this limited instance, of unsolicited absentee ballots to those displaced persons with known addresses;

5) Directing Defendants to publicize the notice of elections in all states in which displaced persons reside;

6) Directing Defendants to accept from displaced residents alternative forms of identification to register and vote, including but not limited to FEMA relief applications, Red Cross documents, and other documents that indicate their New Orleans address;

7) Awarding the Plaintiffs costs and disbursements associated with the filing and maintenance of this action, including an award of reasonable attorneys' fees; and

8) Granting such other relief as this Court deems appropriate.

Dated: February 9, 2006

Respectfully submitted,

William P. Quigley, 7769
LOYOLA UNIVERSITY NEW ORLEANS LAW SCHOOL
7214 St. Charles Avenue
New Orleans, LA 70118
duprestars@yahoo.com
Temporary phone: 832.489.6408

*Penda D. Hair
Judith A. Browne
Edward A. Hailes, Jr.
*Elizabeth S. Westfall
Donita Judge
Jennifer L. Maranzano
ADVANCEMENT PROJECT
1730 M Street, NW
Suite 910
Washington, DC 20036
Tel. 202-728-9557
Fax. 202-738-9558
*Motion for Pro Hac Vice to be submitted*

Tracie L. Washington, 25925
P.O. Box 15107
New Orleans, Louisiana 70175-5107
Tel: 504.899.1889
Fax: 504.899.1091

2606 Dryades Street
New Orleans, Louisiana 70113
Tel: 504.899.1889
Fax: 504.899.1091

OJS 44 (Rev. 3/99)

# CIVIL COVER SHEET

06-0611

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
ACORN

**DEFENDANTS**
Kathleen Blanco

SECT. B MAG. 1

(b) County of Residence of First ORLEANS
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
William P. Quigley, 7769
Loyola University New Orleans Law School
7214 St. Charles Avenue
New Orleans, LA 70118 832-489-6408 (temp. ph.)

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

G 1 U.S. Government Plaintiff
X 3 Federal Question (U.S. Government Not a Party)
G 2 U.S. Government Defendant
G 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff (For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | G 1 | G 1 | Incorporated *or* Principal Place of Business In This State | G 4 | G 4 |
| Citizen of Another State | G 2 | G 2 | Incorporated *and* Principal Place of Business In Another State | G 5 | G 5 |
| Citizen or Subject of a Foreign Country | G 3 | G 3 | Foreign Nation | G 6 | G 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
G 110 Insurance
G 120 Marine
G 130 Miller Act
G 140 Negotiable Instrument
G 150 Recovery of Overpayment & Enforcement of
G 151 Medicare Act
G 152 Recovery of Defaulted Student Loans (Excl. Veterans)
G 153 Recovery of Overpayment of Veteran's Benefits
G 160 Stockholders' Suits
G 190 Other Contract
G 195 Contract Product Liability

**REAL PROPERTY**
G 210 Land Condemnation
G 220 Foreclosure
G 230 Rent Lease & Ejectment
G 240 Torts to Land
G 245 Tort Product Liability
G 290 All Other Real Property

**TORTS**

PERSONAL INJURY
G 310 Airplane
G 315 Airplane Product Liability
G 320 Assault, Libel & Slander
G 330 Federal Employers' Liability
G 340 Marine
G 345 Marine Product Liability
G 350 Motor Vehicle
G 355 Motor Vehicle Product Liability
G 360 Other Personal

PERSONAL INJURY
G 362 Personal Injury—Med. Malpractice
G 365 Personal Injury — Product Liability
G 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
G 370 Other Fraud
G 371 Truth in Lending
G 380 Other Personal Property Damage
G 385 Property Damage Product Liability

**CIVIL RIGHTS**
x 441 Voting
G 442 Employment
G 443 Housing/ Accommodations
G 444 Welfare
G 440 Other Civil Rights

**PRISONER PETITIONS**
G 510 Motions to Vacate Sentence
Habeas Corpus:
G 530 General
G 535 Death Penalty
G 540 Mandamus & Other
G 550 Civil Rights
G 555 Prison Condition

**FORFEITURE/PENALTY**
G 610 Agriculture
G 620 Other Food & Drug
G 625 Drug Related Seizure of Property 21 USC 881
G 630 Liquor Laws
G 640 R.R. & Truck
G 650 Airline Regs.
G 660 Occupational Safety/Health
G 690 Other

**LABOR**
G 710 Fair Labor Standards Act
G 720 Labor/Mgmt.
G 730 & Disclosure Act
G 740 Railway Labor Act
G 790 Other Labor Litigation
G 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
G 422 Appeal 28 USC 158
G 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
G 820 Copyrights
G 830 Patent
G 840 Trademark

**SOCIAL SECURITY**
G 861 HIA (1395ff)
G 862 Black Lung (923)
G 863 DIWC/DIWW (405(g))
G 864 SSID Title XVI
G 865 RSI (405(g))

**FEDERAL TAX SUITS**
G 870 Taxes (U.S. Plaintiff or Defendant)
G 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
G 400 State Reapportionment
G 410 Antitrust
G 430 Banks and Banking
G 450 Commerce/ICC Rates/etc.
G 460 Deportation
G 470 Racketeer Influenced and Corrupt Organizations
G 810 Selective Service
G 850 Securities/Commodities/ Exchange
G 875 Customer Challenge 12 USC 3410
G 891 Agricultural Acts
G 892 Economic Stabilization
G 893 Environmental Matters
G 894 Energy Allocation Act
G 895 Freedom of Information Act
G 900 Appeal of Fee Under Equal Access to Justice
G 950 Constitutionality of State Statutes
G 890 Other Statutory Actions

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

X 1 Original Proceeding | G 2 Removed from State Court | G 3 Remanded from Appellate Court | G 4 Reinstated or Reopened | G 5 Transferred from another district (specify) | G 6 Multidistrict Litigation | G 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
VIOLATION OF THE VOTING RIGHTS ACT

**VII. REQUESTED IN COMPLAINT:** X CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 **DEMAND $** CHECK YES only if demanded in complaint:
**JURY DEMAND:** G Yes G No

| | | | | | |
|---|---|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | (See instructions): | JUDGE | Lemelle | DOCKET NUMBER | 05-5519 |

| | |
|---|---|
| DATE | SIGNATURE OF ATTORNEY OF RECORD |

**FOR OFFICE USE ONLY**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| RECEIPT # | | AMOUNT | | APPLYING IFP | | JUDGE | | MAG. JUDGE | |

JS 44 Reverse (Rev. 12/96)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS-44

Authority For Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States, are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section IV below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause.

**VII.** **Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases**. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.